## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

2018 MAY 18 P 12: 39

SHERMANEEKA RENFROE,

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Plaintiff,

v.

KOHL'S DEPARTMENT STORES, INC.,

Defendant

) CASE NO: 3:18-cv-510

)
) CLASS ACTION LAWSUIT
)
) JURY DEMANDED
)
)

## COMPLAINT

Plaintiff Shermaneeka Renfroe, individually and on behalf of all others similarly situated, asserts this class action complaint against Kohl's Department Stores, Inc. ("Kohl's") and alleges as follows:

### JURISDICTION AND VENUE

1.     The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331. Counts One and Two of this Complaint arise under federal law, namely the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, ("FCRA").

2.     Venue is proper in the Middle District of Alabama, Eastern Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District. In particular, Kohl's employees submitted unauthorized applications for Kohl's credit cards with Plaintiff's name

1

and personal information in the Opelika, Alabama Store which is in the Eastern Division of the Middle District of Alabama.

## PARTIES

3. Plaintiff Shermaneeka Renfroe is an individual who lives in Opelika, Alabama.

4. Kohl's is a Delaware corporation that operates more than 1,100 department stores across 49 states. Kohl's does business in the Middle District of Alabama.

5. Kohl's is headquartered in Menomonee Falls, Wisconsin, where it also maintains its principal place of business.

## COMMON FACTUAL ALLEGATIONS

6. Kohl's has partnered with Capital One Financial Corporation (Capital One) to operate a program called "Kohl's Charge" through which Kohl's offers its own branded credit card for customers to use for in-store purchases.

7. Kohl's associates are authorized to solicit and submit credit card applications for customers. Kohl's holds out its associates to the general public as authorized to solicit and submit credit card applications.

8. Kohl's employees, in submitting credit card applications, obtains the personal identification markers of a customer or employee, such as that person's name, date of birth, address and social security number, and inputs that personal

2

information into the point of sale system. Kohl's, possibly in conjunction with Capital One, uses this information to request a consumer credit report on the person.

9.     The request for the consumer credit report from a credit reporting agency causes a "hard inquiry" on the consumer's credit report, which can be viewed by other creditors seeking information and can remain on a consumer's credit report for two years.

10.     Hard inquires on a credit report are material in that a hard inquiry can lower a person's credit score and can affect a person's ability to obtain favorable credit, and multiple "hard inquires" related to credit card accounts pose a greater risk to a consumer's credit score, which could result in the outright denial of credit or an unfavorable report.

11.     A person with a low credit score may have higher interest rates, more restrictive terms of credit, difficulty renting a house or apartment, difficulty obtaining employment, higher insurance premiums, or difficulty obtaining utilities or cell phone services, and creditors view consumers with six or more hard inquiries as a greater risk and are less likely to extend credit to them.

12.     Almost immediately upon submitting the consumer's personal information, and, depending upon a customer's creditworthiness, Kohl's will either approve or deny the application.

3

13.     In general, Kohl's issues an approval or denial almost immediately after submitting an application.

14.     Rather than being approved or denied, some applications are deemed "unable to process" for a variety of reasons, including an incorrect social security number.

15.     Kohl's pressures store managers and associates to solicit and submit credit card applications.

16.     Associates in Kohl's stores are often instructed to ask customers during checkout whether they would like to apply for a Kohl's credit card.

17.     At some stores, sales associates will greet customers as they enter or exit the store and ask them if they want to apply for a Kohl's credit card.

18.     Kohl's sets credit card application goals for its stores, providing specific numbers of applications a store is expected to submit. These goals are tracked on a daily, monthly, and yearly basis.

19.     In fact, District Managers will often email Store Managers multiple times a day after reviewing a store's progress toward achieving credit card goals and urge those stores to increase their credit card solicitation.

20.     If a store meets its yearly goal, Kohl's will often increase that store's goal for the following year.

4

21.   Ten percent of a store manager's evaluation is based on his or her store meeting its credit card application goals.

22.   Credit card application goals also play a role in the performance evaluation of District Managers and Regional Vice Presidents.

23.   Associates are often rewarded with performance bonuses for each credit card application submitted. For instance, Kohl's has, at times, paid associates $1.00 for every application he or she solicits.

24.   In awarding compensation incentives, Kohl's does not take into account whether the applications an associate solicits are approved.

25.   In some stores, sales associates who submit more credit card applications will be scheduled to work more hours; whereas, sales associates who do not submit many credit card applications will be scheduled for fewer hours.

26.   Kohl's goals and incentives are based on the number of applications submitted—whether or not those applications are actually approved.

27.   To meet Kohl's high-pressure goals, earn performance incentives, and be scheduled for more hours, many Kohl's employees have devised ways to submit applications without the consent of the applicant.

28.   Employees will take the personal information of other associates and submit credit card applications with that information without the authorization of the applicant.

5

29. Employees will take the personal information from people who apply for jobs at Kohl's and submit credit card applications with that information without the authorization of the applicant.

30. Employees will take the personal information of family members, friends, and other individuals and submit credit card applications with that information without the authorization of the applicant.

31. Employees intentionally submit these applications, knowing that they have not obtained the consent of the person whose personal information is used in the application.

32. Kohl's intentionally or recklessly pressures its associates to obtain personal identification markers and submit fraudulent credit card applications, which results in Kohl's obtaining consumer credit reports without a permissible purpose.

33. Kohl's employees will frequently use the same person's information multiple times. Often, the first application will be denied, yet the employee continues to submit applications.

34. For example, a single sales associate submitted over 80 credit card applications for Renfroe over the course of approximately two years.

35. These applications are not submitted in connection with a credit transaction involving the applicant. Rather, the applications are submitted to earn a compensation incentive or meet Kohl's high pressure goals.

6

36. The practice of using a person's personal information without his or her consent to submit multiple unauthorized credit card applications is common through many of Kohl's stores.

37. Kohl's is on notice of these fraudulent applications, yet Kohl's has not taken sufficient actions to stop this practice.

38. Specifically, Kohl's has not contacted Renfroe or any Credit Reporting Agency to notify either of the fraudulent applications and remove the hard inquiries from her credit report. This is likely the case for all potential class members.

39. Kohl's has employees who monitor possible application fraud by looking at the repeated use of a single social security number for multiple applications. However, this monitoring—and any resulting action—has failed to stop the widespread practice of submitting fraudulent applications.

40. Despite Kohl's knowledge of the problem, it has not changed the policies that pressure its employees into submitting unauthorized applications. It still sets store credit card goals, provides financial incentives for applications (including declined applications), and allows managers to give favorable work schedules to store associates who submit more applications.

41. In some instances, Kohl's has retained, and even promoted, employees who have submitted fraudulent credit card applications.

7

## CLASS REPRESENTATIVE FACTUAL ALLEGATIONS

42.    Shermaneeka Renfroe previously worked at Kohl's as a store associate from August 2015 to July 2016, and voluntarily left her job in July 2016.

43.    Twice during her employment, Renfroe applied for a Kohl's Charge Card and was denied.

44.    However, during Renfroe's employment, a single Kohl's associate repeatedly used Renfroe's personal information to submit over 80 credit card applications.

45.    Other than the two applications Renfroe authorized, she did not authorize any of the additional, repeated applications.

46.    Renfroe requested a consumer report from Experian on August 1, 2017. That consumer report reflected 80 hard inquiries identified as "KOHLS/CAPONE."

47.    On July 6, 2016, Timothy Eger, a Kohl's employee, emailed Jason Deaton, who was a District Loss Prevention Manager for the District including Opelika, Alabama, and informed him that one associate at the Opelika store had run 85 credit card applications for Renfroe within a two- year threshold.

48.    Eger stated in his email, "We have seen a number of Associate trying to get more applications entered to manipulate his/her application incentive."

49.    Kohl's did not contact Renfroe to alert her of its illegal use of her identifying information and consumer report.

8

50.    Kohl's did not offer to have the hard inquiries removed from Renfroe's credit report.

51.    Kohl's did not offer to compensate Renfroe for any losses she incurred as a result of Kohl's fraudulently submitting credit card applications in her name.

## NATIONWIDE CLASS DEFINITION AND CLASS ACTION

## ALLEGATIONS

52.    Plaintiff brings this suit as a nationwide class action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Class that Plaintiff seeks to represent is defined as follows:

**All Individuals in the United States Whose Personal Information Was Used by Kohl's to Submit a Credit Card Application and Obtain a Consumer Report Without a Permissible Purpose Within the Past Five Years.**

53.    Numerosity: The members of the Class are so numerous that joinder of all members would be impractical. The proposed Class likely contains hundreds of members. The precise number of class members can be ascertained through Kohl's records because Kohl's tracks the number of credit card applications submitted by name and social security number.

54.    Commonality: this case presents common questions of law and fact as to the putative class members, including

9

a. Whether Kohl's has a practice of submitting multiple credit card applications with the personal information of persons who did not authorize or initiate the application.

b. Whether Kohl's obtained a consumer report from a credit reporting agency for Plaintiff and the class members;

c. Whether Kohl's had a "permissible or legitimate purpose" for submitting personal information for the purpose of obtaining a consumer report for Plaintiff and the class members;

d. Whether Kohl's request for a consumer report for Plaintiff and the class members resulted in a "hard inquiry" on their credit reports;

e. Whether Kohl's actions were willful, reckless or negligent;

f. Whether Kohl's actions violate the FCRA; and

g. Whether Plaintiff and the class members are entitled to relief under the FCRA.

55. Typicality: The representative Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all the members of the Class have been injured by the same wrongful practice of Kohl's. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

10

56.   Adequate Representation: Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel and law firms that are experienced in the prosecution of complex class actions.

57.   Predominance: Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over questions only affecting individual members of the class. In particular, the common questions of law and fact listed above are all capable of class-wide proof. Further, Kohl's records will likely show lack of consent or other permissible purpose for each credit card application.

58.   Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit. Individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class and the available statutory relief are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a significant interest in

11

individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT ONE
### (Willful Violation of the FCRA, 15 U.S.C. § 1681n)

59. Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference the foregoing paragraphs 1-58 as if specifically incorporated herein by reference.

60. Kohl's obtained consumer credit reports for Plaintiff and the class members after submitting credit card applications with Plaintiff's and the class members' personal information and obtained consumer credit reports without a permissible purpose as required by 15 U.S.C. Section 1681b.

61. Kohl's marketing and bonus compensation plan encouraged and permitted its employees submit credit card applications without a permissible purpose because of the pressure placed on them through store credit card application goals, compensation incentives, and favorable work schedules—not in connection with a credit transaction.

62.     Instead, many consumer credit reports were requested from credit reporting agencies by applying for a credit card in a consumer's name who never authorized the submission of an application.

63.     Kohl's marketing efforts led to the submission of numerous credit card applications, many in the name of the same consumer, which triggered "hard inquiries" on the same person's information, knowing that the application would not lead to a credit transaction with that person.

64.     Plaintiff and the class members did not complete or initiate these credit card applications, nor authorize a credit reporting agency to provide their consumer reports to Kohl's for any permissible purpose.

65.     Kohl's did not intend to use Plaintiff's and the class members' consumer credit reports (1) in connection with employment purposes, (2) in connection with the underwriting of insurance, (3) for a determination of eligibility for a license or other government benefit, or (4) as a potential investor or servicer, or a current insurer, in connection with a valuation of an existing credit obligation.

66.     Kohl's did not provide the proper disclosures for obtaining a credit report for employment purposes for Plaintiff and the class members.

67.     Kohl's did not have a legitimate business need for Plaintiff's and the class members' consumer report in connection with a business transaction initiated by Plaintiff or the class members.

13

68. Kohl's did not have a legitimate business need for Plaintiff's and the class members' consumer report to review an account to determine whether Plaintiff or class members continued to meet the terms of an account.

69. Kohl's is not an executive department or agency authorized to obtain consumer reports in connection with the issuance of government-sponsored charge cards.

70. Kohl's is not a state or local child support enforcement agency authorized to obtain consumer reports for child support purposes.

71. Kohl's is not an agent or affiliate of the Federal Deposit Insurance Corporation ("FDIC") or National Credit Union Administration ("NCUA") authorized to obtain consumer reports as part of the FDIC's or NCUA's powers.

72. Kohl's willfully violated the FCRA by submitting these credit card applications and obtaining a consumer report without a permissible purpose.

73. Kohl's represented store managers, store associates, and other employees submitting these applications as having the authority to solicit and submit credit card applications. Employees submitting fraudulent credit card applications did so intentionally and with knowledge that they did not have a permissible purpose

74. Kohl's knew that Plaintiff and the class members did not initiate the transaction or authorize Kohl's to obtain a consumer report in connection with a credit transaction.

14

75.    Kohl's executives, including Regional Vice Presidents, knew about these illegal credit card applications and did not take appropriate actions to stop it or correct the practice. But, instead, Kohl's continued setting goals and providing incentives to stores and employees who submitted illegal credit card applications and obtained credit reports without a legitimate business purpose.

76.    Kohl's failed to consistently terminate or prosecute employees who submitted these illegal applications, failed to suspend its employee bonus and incentive plan, and continued to pressure the submission of credit card applications without regard to approval.

77.    As a result of Kohl's willful violation of the FCRA, Plaintiff and the class members suffered a violation of the statutory protections provided under the FCRA.

78.    Further, Plaintiff and the class members' consumer credit reports reflected a hard inquiry—which can reduce a consumer's credit score and affect his or her ability to obtain favorable credit.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Kohl's for statutory and punitive damages plus attorney's fees and costs.

15

## COUNT TWO
### (Negligent Violation of the FCRA, 15 U.S.C. § 1681n)

79. Plaintiff, individually, and on behalf of all others similarly situated, incorporates herein by reference paragraphs 1-58.

80. In acquiring, storing and maintaining the personal identification and personal information of the Plaintiff and those similarly situated, Kohl's owed a duty to Plaintiff and those similarly situated, to exercise reasonable care in the maintenance, storage, dissemination and use of such personal information.

81. Kohl's had a duty to maintain, store, disseminate and submit the use of such personal information for lawful purposes only, which included restraining employees from the submission of credit card applications that resulted in obtaining a consumer report except for a permissible purpose.

82. Kohl's had a duty to ensure that its employees did not submit personal information that resulted in the issuance or obtaining of a consumer credit report by reasonably supervising its employees and by enforcing procedures to avoid submissions of credit card applications without having a permissible purpose.

83. Kohl's had a duty to comply with the requirements set forth in the FCRA. In particular, Kohl's had a duty to obtain consumer credit reports only for the permissible purposes outlined in the FCRA.

84. Kohl's breached its duties by engaging in a marketing credit card scheme that placed undue pressure on employees to solicit and obtain credit card

16

applications and compensated employees without regard to their successful or unsuccessful efforts in obtaining a Kohl's credit card, by failing to properly supervise employees, and by failing to put into place procedures to avoid submission of credit card applications that generated a consumer credit report without a permissible purpose.

85.    Kohl's negligence caused Kohl's to obtain consumer credit reports for Plaintiff and the class members without a permissible purpose, which is negligence per se in violation of the FRCA.

86.    As a proximate result and consequence of the negligence of Kohl's, Plaintiff and those similarly situated suffered violations of the statutory protections provided under FCRA, incurred numerous unnecessary "hard inquiries," received lower credit scores, exposed their credit to other creditors in a negative manner and affect their ability to obtain favorable credit.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Kohl's for statutory and punitive damages plus attorney's fees and costs.

## REQUEST FOR JURY TRIAL

Plaintiff demands a trial by jury.

This the 7th day of May, 2018.

17

_Randall S. Haynes_

Randall S. Haynes (ASB-2865-A52R)

_George Beck_

George Beck (ASB-9590-B37G)
Attorneys for Plaintiff
**MORRIS, HAYNES, WHEELES,**
**KNOWLES & NELSON**
131 Main Street
PO Box 1660
Alexander City, Alabama 35011
Phone: (256) 329-2000
Fax: (256) 329-2015
rhaynes@mhhlaw.net
gbeck@mhhlaw.net

**PLEASE SERVE THE COMPLAINT BY CERTIFIED MAIL ON THE DEFENDANT VIA THE FOLLOWING ADDRESS:**

KOHL'S DEPARTMENT STORES, INC.
c/o Corporate Creations Network Inc., Registered Agent
6 Office Park Circle #100
Mountain Brook, Alabama 35223

18